# EXHIBIT E



# United States Department of the Interior

### OFFICE OF THE SECRETARY
Washington, DC  20240

## OCT 1 6 2015

The Honorable Milton P. Herrera
Governor, Pueblo of Tesuque
Route 42
Box 360-T
Santa Fe, New Mexico 87506

Dear Governor Herrera:

On August 10, 2015, our office received from the State of New Mexico (State) a copy of the Indian Gaming Compact (Compact) between the State and the Pueblo of Tesuque (Tribe).  The compact is identical to several Tribal-State Compacts between the State of New Mexico and five other New Mexico Tribes that were approved by operation of law on June 22, 2015.[1]

Under the Indian Gaming Regulatory Act (IGRA), the Secretary of the Interior (Secretary) may approve or disapprove a proposed compact within 45 days of its submission.[2]  If the Secretary does not approve or disapprove the proposed compact within 45 days, IGRA states that the compact is "considered to have been approved by the Secretary, but only to the extent the Compact is consistent with the provisions of [IGRA]."[3]

To assist us in our review of the 2015 Compact, we requested that the Tribe provide additional information and a financial analysis.  We have completed our review of the 2015 Compact and the response submitted by the Tribe.  As noted above, the Compact is identical to compacts submitted earlier this year by five sister tribes located in New Mexico and our concerns remain the same.  Accordingly, no action was taken on the 2015 Compact within the 45-day review period, and it is considered approved by operation of law, but only to the extent it is consistent with the provisions of IGRA.  *See* 25 U.S.C. § 2710 (d)(8)(C).

---

[1] On April 20, 2015, we received Tribal-State Compacts between the State of New Mexico and the Jicarilla Apache Nation, the Mescalero Apache Tribe of the Mescalero Reservation, the Navajo Nation, the Pueblo of Acoma, and the Pueblo of Jemez.  No action was taken on these compacts within the 45 day review period prescribed by IGRA, and all five compacts were therefore "considered to have been approved by the Secretary, but only to the extent the compact[s]" are consistent with IGRA.  *See* Notice of Tribal-State Class III Gaming Compacts taking effect, 80 Fed. Reg. 35668 (Jun. 22, 2015).

[2] 25 U.S.C. § 2710 (d)(8).

[3] 25 U.S.C. § 2710 (d)(8)(C).

**Discussion**

As we have stated in the past, each "[tribe] is a separate and independent sovereign with its own identity and salient issues," and good faith negotiations require that the State address issues that are relevant to each individual tribe.[4] IGRA permits an Indian Tribe to enter into a Tribal-State compact governing gaming activities on the Indian lands of the Tribe. Here, our understanding is that each of the New Mexico Tribes, including the Pueblo of Tesuque, made an independent determination to execute the 2015 Compact.

*Revenue Sharing Provisions*

We review revenue sharing requirements in gaming compacts with great scrutiny. We inquire, first, whether the state has offered meaningful concessions that it was not otherwise required to negotiate, such as exclusive rights to operate class III gaming or other benefits sharing a gaming-related nexus. We then examine whether the value of the concessions provide substantial economic benefits to the tribe to justify the revenue sharing negotiated.

As explained below, we find that the Compact's revenue sharing provisions satisfy our test, and therefore do not violate IGRA, provided the partially exclusive right to operate Class III gaming enjoyed by the tribes in New Mexico continue undiminished. The Tribe asserts that the State has granted small costs saving incentives, and slightly reduced regulatory fees to the Tribes in the 2015 Compact. We agree. The State's concession for a graduated increase in revenue sharing rates over the term of the compact does provide some economic benefit to the Tribe.

The Tribe will maintain partial exclusivity over slot machines while maintaining full exclusivity over all other forms of class III gaming under IGRA. Non-tribal commercial racinos may operate a maximum of 750 slot machines for 18 hours a day at up to 6 locations for the duration of the 2015 Compacts. We consider this exclusivity to be enough of a meaningful concession under our test. The absence of limitations on the number of slot machines and hours of operation, however, is a much closer question because those purported concessions may be considered regulatory issues over which the State is obligated to negotiate under IGRA.

Under the second prong of our analysis, the Tribe contends that the 2015 Compact has terms more favorable than its current compact. The Tribe explains that it felt compelled to enter into this compact because though it does not address the Tribe's specific economic issues, it provides at least a small benefit to the Tribe.[5] The Tribe indicates that it will pay slightly lower revenue

---

[4] *See* Letter to the Honorable Susan Martinez, Governor, State of New Mexico, from Kevin K. Washburn, Assistant Secretary – Indian Affairs, disapproving the proposed Class III Gaming Compact between the Pueblo of Jemez and the State of New Mexico (Aug. 27, 2014).

[5] The Tribe states that it initially opposed 2015 Compact because the Tribe believes the terms do reflect the issues confronting the Tribe, including market oversaturation and an additional tribal casino opening within two miles of the Tribe's gaming facility. Thus, the Tribe states the 2015 Compact provides only a small economic benefit to the Tribe. *See* Letter from Milton Herrera, Governor of the Pueblo of Tesuque to Paula L. Hart, Director, Office of Indian Gaming (Sept. 1, 2015).

sharing rates under the 2015 Compact than it would have under the 2007 Compact.[6]  Moreover, if the State permits any additional non-tribal gaming, the Tribe's obligation to make revenue sharing payments will cease.

While the State has conceded partial exclusivity over slot machines and full exclusivity over other forms of Class III gaming, we remain skeptical about the overall value of the 2015 Compact's additional claimed concessions.  However, given the Tribe's position that it will receive a small costs saving compared to the 2007 compact, we take no action within the 45-day time limit on this issue.

*Free Play and Point Play*

We are troubled by the assertion in the Tribe's response indicating that the State seeks additional revenue sharing payments stemming from free play under the 2007 Gaming Compact.  Section 7 of the 2015 Compact provides a two-year period from its effective date for the State to pursue its assertion that the Tribe's net win should not deduct wins and losses arising from free play or point play.  Our position remains the same.  Free play and point play must be treated according to industry standards and Generally Accepted Accounting Principles (GAAP) by excluding both from the definition of "net win," which forms the basis for revenue sharing calculations.  We are in agreement with the Tribe that its net win – and thus its revenue sharing payments – should include wins and losses arising from free play or point play and should result in a reduction in revenue sharing payments.[7]  In light of its conflict with industry standards and GAAP, it is our view that a contrary assertion by the State that includes such sums in revenue sharing calculations would constitute an impermissible tax on tribal gaming revenues in violation of IGRA.[8]

*Internet Gaming Ambiguity*

Section 17 of the 2015 Compact provides that internet gaming is prohibited in the State.  This section further provides, however, that if the State authorizes internet gaming, the parties will reopen negotiations to evaluate the impacts of internet gaming and consider adjustments to the Compact.  Arguably, if the State permits internet gaming, it would constitute an expansion of gaming in the State.[9]  In our view, this provision introduces considerable ambiguity regarding the interplay between Section 11(D) and Section 17.  Our view is that if non-tribal internet gaming is

---

[6] The Tribe states that the 2015 compact provides small cost saving incentives, and slightly reduced regulatory fees which results in a costs savings to the Tribe of $5million over the 23-year term of the Compact.  The Tribe states that because of market oversaturation and a lagging economy, it chose not to fill one-third of its casino's workforce and has laid off one-third of its tribal employees while reducing essential tribal programs. *Id.* at 2.

[7] The Tribe included in its response a letter from the Office of the State Auditor, which opines that the NM Tribes' method for calculating net win is consistent with GAAP. *See* Letter from New Mexico State Auditor to New Mexico Gaming Control Board (Dec. 29, 2014).

[8] There is no predecessor agreement between the parties except the 2007 Compact. *Id.* at 3, fn 1.

[9] At this time, the lawfulness of internet gaming is unsettled and we take no position as to the legality of internet gaming under the circumstances presented.

4

allowed in the State, it would undermine the State's promise of exclusivity and affect the value of the concession by the State, thereby supporting cessation of the Tribe's payments to the State.

**Conclusion**

We have taken no action on the 2015 Compact within the 45-day review period.  As a result, the 2015 Compact is considered to have been approved, but only to the extent it is consistent with the provisions of IGRA.  The 2015 Compact will become effective upon its publication of notice in the *Federal Register*.[10]

A similar letter was sent to Governor Susana Martinez, Governor of the State of New Mexico.

Sincerely,

Kevin K. Washburn
Assistant Secretary – Indian Affairs

---

[10] *See* 25 U.S.C. § 2710(d)(3)(8).