# EXHIBIT F



United States Department of the Interior

OFFICE OF THE SECRETARY
Washington, DC 20240

JUN 09 2015

The Honorable Susana Martinez
Governor of New Mexico
Santa Fe, New Mexico 87501

Dear Governor Martinez:

On April 20, 2015, the Department of the Interior (Department) received the Tribal-State Gaming Compacts (2015 Compacts) between the State of New Mexico (State) and the Jicarilla Apache Nation, Mescalero Apache Tribe of the Mescalero Reservation, Navajo Nation, Pueblo of Acoma, and Pueblo of Jemez (Tribes). The five compacts are identical. These Tribes are operating casinos pursuant to their 2001 Tribal-State Compacts with the State. We acknowledge that the Tribes and the State have expended considerable time and effort to reach agreement on the 2015 Compacts.

Under the Indian Gaming Regulatory Act (IGRA), the Secretary of the Interior (Secretary) may approve or disapprove a proposed compact within 45 days of its submission.[1] If the Secretary does not approve or disapprove the proposed compact within 45 days, IGRA states that the compact is "considered to have been approved by the Secretary, but only to the extent the Compact is consistent with the provisions of [IGRA]."[2]

To assist us in our review of the 2015 Compacts, we requested that the Tribes and the State provide additional information and financial analysis. We have completed our review of the 2015 Compacts and the responses submitted by the Tribes and the State. As discussed below, we have taken no action on the 2015 Compacts within the 45-day review period. Therefore, the 2015 Compacts are considered to have been approved by operation of law, but only to the extent they are consistent with the provisions of IGRA. See 25 U.S.C. § 2710 (d)(8)(C).

**Discussion**

We have stated in the past that each "[tribe] is a separate and independent sovereign with its own identity and salient issues," and that good faith negotiations require the State to

---

[1] 25 U.S.C. § 2710 (d)(8).
[2] 25 U.S.C. § 2710 (d)(8)(C).

address issues that are actually relevant to each tribe.[3] Here, our understanding is that each of the Tribes made an independent determination that coordinating their efforts to negotiate the 2015 Compacts was in their best interests. We, therefore, proceed accordingly.

*Revenue Sharing Provisions*

The Department reviews revenue sharing requirements in gaming compacts with great scrutiny. First, staff inquire whether a state has offered meaningful concessions that it was not otherwise required to negotiate, such as exclusive rights to operate class III gaming or other benefits sharing a gaming-related nexus. Staff then examine whether the value of the concessions provide substantial economic benefits to the tribe to justify the negotiated revenue sharing.

Under the first prong of our analysis, the Tribes assert that the State has granted meaningful concessions to the Tribes. The Tribes will continue to receive partial exclusivity over slot machines while maintaining full exclusivity over all other forms of class III gaming under IGRA. Non-tribal commercial casinos may operate a maximum of 750 slot machines for 18 hours a day at up to 6 locations for the duration of the 2015 Compacts. Except for an optional "Legacy Gaming Facility," the Tribes are not subject to such limitations at up to two locations.[4] We consider this exclusivity to be a meaningful concession under our test. The absence of limitations on the number of slot machines and hours of operation, however, is a much closer question because those purported concessions may be considered regulatory issues over which the State is obligated to negotiate under IGRA.

The Department also questions whether the additional duration should be considered a meaningful concession or, instead, a regulatory issue. All of the Tribes, however, contend that 2015 Compacts' extension of the restriction on non-tribal casinos as a contractual matter within the Compacts constitutes a valuable protection that is being obtained at a lower cost than paid by the Tribes operating under the 2007 Compacts, and, thus, constitutes a meaningful concession.

Under the second prong of our analysis, all five Tribes contend that they will benefit from the certainty that their existing gaming-related investments will continue uninterrupted for many years. Moreover, if the State permits any additional non-tribal gaming, the Tribes' obligation to make revenue sharing payments will cease. However, it otherwise appears that the 2015 Compacts provide a different level of benefit to each Tribe. For example, in its response to our request for additional information, Jicarilla indicated that it meets the lower threshold for revenue sharing and that, as a result, its payment to the State will decrease under the 2015 Compacts. Even though revenue sharing amounts appear to increase for Acoma, Mescalero, and Navajo, they stated that they would benefit from the 2015 Compacts versus their existing

---

[3] *See* Letter to the Honorable Susana Martinez, Governor, State of New Mexico, from Kevin K. Washburn, Assistant Secretary – Indian Affairs, disapproving the proposed Class III Gaming Compact between the Pueblo of Jemez and the State of New Mexico (August 27, 2014).

[4] Section 3.C.1 (b) provides that tribes with membership exceeding 75,000 may operate up to three locations as well as a Legacy Gaming Facility. At this time, only the Navajo Nation meets the threshold.

2001 Compacts because the revenue sharing payments ensure substantial tribal exclusivity through 2037, the year the 2015 Compacts expire, and at lower rates than those paid by the Tribes operating under the 2007 Compacts.[5]

We are troubled by the apparent increase in revenue sharing rates for three of the Tribes. Our analysis leads us to conclude that it is a close question whether the 2015 Compacts provide a substantial economic benefit to these Tribes. Given the Tribes' unified stance that they receive substantial economic benefit from the 2015 Compact, however, we take no action on the 2015 Compacts within the 45-day time limit on this issue.

*Free Play and Point Play Resolved*

We wish to commend the Tribes and the State for the successful resolution of the free play and point play issue. Free play and point play will now be treated according to industry standards and Generally Accepted Accounting Principles (GAAP) by excluding both from the definition of "net win," which forms the basis for revenue sharing calculations. We note, however, that Section 7 of the 2015 Compacts reserves a 2-year period from its effective date for the State to pursue its assertion that the Tribes' net win – and, thus, their revenue sharing payments – should include wins and losses arising from free play or point play. Nothing in the revenue sharing provisions of the 2001 Compacts supports the State's position. Moreover, in light of its conflict with industry standards and GAAP, it is our view that the State's unilateral determination to include such sums in revenue sharing calculations would constitute an impermissible tax on tribal gaming revenues in violation of IGRA.

*Internet Gaming Ambiguity*

Section 17 of the 2015 Compacts provides that internet gaming is prohibited in the State. This Section further provides, however, that if the State authorizes internet gaming, the parties will reopen negotiations to evaluate the impacts of internet gaming and consider adjustments to the Compacts. Arguably, if the State permits internet gaming, it would constitute an expansion of gaming in the State.[6] In our view, this provision introduces considerable ambiguity regarding the interplay between Section 11(D) and Section 17. Our view is that if non-tribal internet gaming is allowed in the State, it would undermine the State's promise of exclusivity and affect the value of the concession by the State, thereby supporting cessation of the Tribes' payments to the State.

---

[5] The Pueblo of Jemez is not a party to the 2001 Compact and does not operate a class III gaming facility today. The Tribe is hoping to commence class III gaming in the near future, and asserts that the 2015 Compact provides to the Tribe distinct advantages and State concessions that are beneficial to the Pueblo.

[6] At this time, the lawfulness of internet gaming is unsettled and we take no position as to the legality of internet gaming under the circumstances presented.

## Conclusion

We have taken no action on the 2015 Compacts within the 45-day review period. As a result, the 2015 Compacts are considered to have been approved, but only to the extent they are consistent with the provisions of IGRA. The 2015 Compacts will become effective upon the publication of notice in the *Federal Register*.[7]

A similar letter will be sent to the principal leaders of each of the five Tribes.

Sincerely,

Kevin K. Washburn
Assistant Secretary – Indian Affairs

---

[7] *See* 25 U.S.C. § 2710(d)(3)(8).