# EXHIBIT G

# STATE OF NEW MEXICO
## GAMING CONTROL BOARD



New Mexico

**Susana Martinez**
Governor

**Jeffrey Landers**
Board Chair

## CONFIDENTIAL

April 13, 2017

Georgene Louis, Executive Director
Pueblo of Isleta Gaming Regulatory Agency
P.O. Box 700
Isleta, New Mexico 87022

Via First Class Mail and
Email to poi975012@isletapueblo.com

**Re: Notice of Noncompliance**

Dear Ms. Louis:

Pursuant to Sections 7.A and 9.B of the 2015 Tribal-State Gaming Compact ("2015 Compact") between the Pueblo of Isleta ("Pueblo") and the State of New Mexico ("State"), I am writing to provide notice that it is the State's position that the Pueblo failed to comply with or has otherwise breached provisions of the 2007 Amended Tribal-State Gaming Compact ("2007 Compact") affecting payment.  Specifically, the Pueblo failed to comply with the requirements of Section 11 of the 2007 Compact related to the computation of "Net Win" and the payment of revenue sharing.  It is the State's position that Section 11 of the 2007 Compact sets out the exclusive formula for calculating revenue sharing.  As such, it has been and continues to be the position of the State that prizes awarded as a result of the use of "free play" are not deductible unless the face value of the "free play" is included in the calculation of the total amount wagered.

As a result of the analysis by the Office of the State Gaming Representative, of information provided by the Pueblo, for the period from April 1, 2011 through July 27, 2015 the Pueblo has underpaid revenue sharing to the State in the amount of $10,107,462.

In addition, the Pueblo's failure to submit the full amount of revenue sharing due to the State, the Pueblo also failed to pay the State the interest that accrued pursuant to the terms of Section

11.C.3 of the 2007 Compact.  Section 11.C.3 provided for interest on any unpaid amounts as follows: "Any payment or portion thereof that is not made within ten (10) days of the due date shall accrue interest at the rate of ten percent (10%) per annum, from the original due date until paid."  Interest through March 31, 2017 is $252,687, bringing the total amount owed to the State to $10,360,149.

In issuing this Notice of Noncompliance, the State has considered the position of the various gaming tribes that the calculation of "Net Win" should take into consideration Generally Accepted Accounting Principles ("GAAP") and the AICPA Gaming Guide's provision that identify a method for handling "free play" for purposes of financial statement preparation and reporting.  However, the 2007 Compact contains no provision that states or infers that the parties are to utilize GAAP for the calculation of "Net Win".

In reviewing the provisions of the 2007 Compact the following Sections are applicable:

Section 4(C) states in pertinent part:

C. Audit and Financial Statements. The Tribal Gaming Agency shall require all books and records relating to Class III Gaming to be maintained in accordance with generally accepted accounting principles. All such books and records shall be retained for a period of at least five (5) years from the date of creation, as required by 25 C.F.R. § 571.7(c). Not less than annually, the Tribal Gaming Agency shall require an audit and a certified financial statement covering all financial activities of the Gaming Enterprise, including written verification of the accuracy of the quarterly Net Win calculation, by an independent certified public accountant licensed by the State. The financial statement shall be prepared in accordance with generally accepted accounting principles **and shall specify the total amount wagered in Class III Gaming on all Gaming Machines at the Tribe's Gaming Facility for purposes of calculating "Net Win" under Section 11of this Compact using the format specified therein.** The financial statement and audit report shall be submitted to the Tribal Gaming Agency, the State Gaming Representative, and the State Treasurer, within one hundred twenty (120) days of the close of the Tribe's fiscal year. Such documents shall be subject to the provisions of § 4(E)(4) of this Compact. The Tribe will maintain the following records for not less than five (5) years:

Section 4.B.12 states:

12.  providing that each electronic or electromechanical gaming device in use at the Gaming Facility must pay out a mathematically demonstrable percentage **of all amounts wagered**, which must not be less than eighty percent (80%), and requiring the Gaming Enterprise to prominently post in visible locations within the Gaming Facility notices stating that the Gaming Enterprise is in compliance with this requirement, and providing a comprehensible explanation of the meaning of this requirement;

SECTION 11. Revenue Sharing.

2

B. Revenue to State. The parties agree that, after the effective date hereof, the Tribe shall make the quarterly payments provided for in Paragraph C of this Section. Each payment shall be made to the State Treasurer for deposit into the General Fund of the State.

C. Calculation of Payment Amounts.

1. As used in this Compact, "Net Win" means the total amount wagered in Class III Gaming at a Gaming Facility, on all Gaming Machines less: (a) the amount paid out in prizes to winning patrons, including the cost to the Tribe of noncash prizes, won on Gaming Machines. The phrase "won on Gaming Machines" means the patron has made a monetary wager, and as a result of that wager, has won a prize of any value. Any rewards, awards or prizes, in any form, received by or awarded to a patron under any form of a players' club program (however denominated) or as a result of patron-related activities, are not deductible. The value of any complimentaries given to patrons, in any form, are not deductible;

(b) the amount paid to the State by the Tribe under the provisions of Section 4(E)(6) of this Compact; and

(c) the sum of two hundred seventy-five thousand dollars ($275,000) per year as an amount representing tribal regulatory costs, which amount shall increase by three percent (3%) each year beginning on the first day of January occurring after the Compact has been in effect for at least twelve months.

3. Payments due pursuant to these terms shall be paid quarterly, no later than twenty-five (25) days after the last day of each calendar quarter, and shall be based upon the Net Win during the preceding quarter. The Tribe shall ascertain the applicable revenue sharing percentage in Section 11(C)(2) above and shall base its quarterly payments on the following factors: (1) the prior year's total "Net Win" amount and the applicable revenue sharing percentage; and (2) its best good faith estimate of its annual "Net Win" for the July 1 – June 30 period. In the event its total "Net Win" for any such period varies from  such estimate, such that the amount due the State for the first three quarters as set forth in Section 11(C)(2), above, is different from the amount paid, the payment due for the fourth quarter shall include any additional amounts due for the first three quarters, or shall reflect a credit for any overpayment. Any payment or any portion thereof that is not made within ten (10) days of the due date shall accrue interest at the rate of ten percent (10%) per annum, from the original due date until paid. The Tribe shall accompany any payment to the State with a detailed breakdown of the particular obligation to which such payment applies, and the basis for the calculation of such payment on a form provided by  the State Gaming Representative.

3

Based on the applicable provisions cited above, it is evident that the Pueblo's audited financial statements are to be prepared utilizing GAAP. (See, Section 4.C). Section 4.C also requires a verification of the accuracy of the "Net Win" calculation and provides an additional requirement with respect to the reporting of the "Net Win" calculation in the financial statements. Specifically, the financial statements **"shall specify the total amount wagered in Class III Gaming on all Gaming Machines at the Tribe's Gaming Facility for purposes of calculating "Net Win" under Section 11 of this Compact using the format specified therein."** Thus the parties agreed that GAAP was to be used for preparation of the financial statements, and they also included the requirement that the Pueblo of Isleta must utilize the specific provisions of Section 11 for purposes of verifying the accuracy of the total amount wagered and the "Net Win" calculation.

Based on the information and data provided by the Pueblo during the Tribal Inspections, the Pueblo has treated "free play" as a wager in calculating the payout percentages required in the formula set out in Section 4.B.12. However, the Pueblo has not included "free play" as an amount wagered for purposes of the "Net Win" calculation as set out in Section 11.C.1.

Our review of Section 11.C.1 evidences that the parties include express language requiring the Pueblo to utilize the specific language in Section 11 for purposes of verifying and calculating "Net Win". Moreover, the language in Section 11.C.1 tracks the language of Section 4.B.12 that requires all wagers to be included in the payout percentage calculation.   In Section 11.C.1 the starting point of the "Net Win" calculation is the total amounts wagered. Thereafter, the parties included specific language that excluded prizes won under any form of player's club program. The parties then agreed to three specific items that would be deducted from the total amounts wagered to determine "Net Win."   There is no language in Section 11.C.1 that permits a deduction for "free play". There is also no provision in the 2007 Compact that requires the parties to ignore the express terms of Section 11.C.1 and compels the parties to utilize some "industry standard" for calculating "Net Win" that is not provided for in the 2007 Compact.

Please be reminded that Section 7 of the 2015 Compact between the State and the Pueblo provides in pertinent part:

> SECTION 7. Dispute Resolution.
>
> A. In the event either party believes that the other party has failed to comply with or has otherwise breached any provision of this Compact, such party may invoke the following procedure:
>
>> 1. The party asserting noncompliance shall serve written notice on the other party. The notice shall identify the specific Compact provision believed to have been violated and shall specify the factual and legal basis for the allegation of noncompliance. The notice shall specifically identify the date, time and nature of the alleged noncompliance.

4

2. In the event an allegation by the complaining party is not resolved to the satisfaction of such party within twenty (20) days after service of the notice set forth in Paragraph A(1) of this section, the complaining party may serve upon the other party a notice to cease conduct of the particular game(s) or activities alleged by the complaining party to be in noncompliance. Upon receipt of such notice, the responding party may elect to stop the game(s) or activities specified in the notice or invoke arbitration and continue the game(s) or activities pending the results of arbitration. The responding party shall act upon one of the foregoing options within ten (10) days of receipt of notice from the complaining party, unless the parties agree to a longer period, but if the responding party takes neither action within such period the complaining party may invoke arbitration by written notice to the responding party within ten (10) days of the end of such period.

Accordingly, we respectfully request that the Pueblo cure its noncompliance and submit payment to the State in the amount of $10,360,149 within 20 days of this notice.

Sincerely,

Paulette Becker
Acting State Gaming Representative

cc:     New Mexico Gaming Control Board
        File