UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

| | |
|---|---|
| THE PUEBLO OF ISLETA, a federally-recognized Indian tribe, THE PUEBLO OF SANDIA, a federally-recognized Indian tribe, and THE PUEBLO OF TESUQUE, a federally-recognized Indian tribe, <br><br>        Plaintiffs, <br><br>PUEBLO OF SANTA ANA, a federally-recognized Indian tribe, and PUEBLO OF SANTA CLARA, a federally-recognized Indian tribe, <br><br>        Plaintiffs-in-Intervention, <br><br>v. <br><br>SUSANA MARTINEZ, in her official capacity as Governor of the State of New Mexico, JEFFREY S. LANDERS, in his official capacity as Chair of the Gaming Control Board of the State of New Mexico, PAULETTE BECKER, in her official capacities as State Gaming Representative and as a member of the Gaming Control Board of the State of New Mexico, and SALVATORE MANIACI, in his official capacity as a member of the Gaming Control Board of the State of New Mexico, <br><br>        Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )    No. 17-cv-654-SCY-KK |

**MEMORANDUM OF LAW IN SUPPORT OF PUEBLO OF SANTA ANA'S AND PUEBLO OF SANTA CLARA'S UNOPPOSED MOTION FOR LEAVE TO INTERVENE**

      The Pueblos of Santa Clara and Santa Ana ("the Pueblos"), by and through their undersigned counsel, submit this memorandum of law in support of their Unopposed Motion for

1

Leave to Intervene.  The Pueblos move for intervention as of right under Fed. R. Civ. P. 24(a)(2), or alternatively request that the Court grant permissive intervention under Fed. R. Civ. P. 24(b)(1)(B).

## BACKGROUND

The Pueblos operate class III gaming in the State of New Mexico pursuant to tribal-gaming compacts as required by the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. Sec. 2710 (d)(1)(C).  In 2007, the Pueblos entered separate tribal-gaming compacts with the State of New Mexico that governed class III gaming conducted on the Pueblos' lands.  (The Pueblos entered into new compacts with the State in the past year, referred to as the "2015 Compacts.")  On April 13, 2017, the Gaming Control Board ("GCB") of the State of New Mexico sent the Pueblos separate "Notice[s] of Noncompliance" alleging that the Pueblos had "failed to comply with or [ ] otherwise breached provisions of the 2007 Amended Tribal-State Gaming Compact ("2007 Compact") affecting payment."  The letter requested that the Pueblos pay the State specified amounts that the GCB claimed were due as revenue sharing payments on the value of "free play" credits played at the Pueblos' gaming facilities during the period from April 1, 2011, to the effective dates of the Pueblos' 2015 Compacts.  The Pueblos replied to this letter on May 19, 2017, articulating the reasons why they believed the claims to be baseless in a good-faith effort to resolve this dispute.

On May 31, 2017, the GCB again sent separate "Notice[s] to Cease Conduct" to the Pueblos. The letter ordered the Pueblos to "cease [their] failure to comply with the requirements of Section 11 of the 2007 Compact related to the computation of 'Net Win' and the payment of revenue sharing."  The letter then demanded that payment be made as requested in the April 13, 2017, letter.

Facing similar demands from the GCB, Sandia, Tesuque, and Isleta Pueblos ("original Plaintiffs") filed suit in this Court on June 19, 2017, seeking a declaration that the Defendants, individual members of the state Gaming Control Board and the Governor, are violating federal law by demanding that the Pueblos make payments that are forbidden by IGRA, and prospective injunctive relief to prevent them from pursuing these claims.  The Pueblos of Santa Ana and Santa Clara wish to intervene as Plaintiffs-in-Intervention, asserting essentially similar claims.  The Pueblos allege that the Defendants are violating federal law, specifically the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701 – 2721 ("IGRA") and regulations issued thereunder, and the tribal-state class III gaming compacts, by trying to impose on the Pueblos' class III gaming operations financial obligations that are contrary to and prohibited by federal law.  The Pueblos seek a declaration that the Defendants' actions are in violation of federal law, and prospective injunctive relief enjoining Defendants, their agents and employees, from seeking to enforce these illegal financial obligations upon the Pueblos, by means of arbitration or otherwise.

**ARGUMENT**

*1. The Pueblos are Entitled to Intervention as of Right*

Federal Rule of Civil Procedure 24(a)(2) provides that upon a timely motion the Court must permit intervention into an action by anyone who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." The Tenth Circuit follows "a somewhat liberal line in allowing intervention." *WildEarth Guardians v. National Park Service*, 604 F.3d 1192, 1198 (10th Cir. 2010) (quoting *WildEarth Guardians v. U.S. Forest Serv.,* 573 F.3d 992, 995 (10th Cir. 2009). The requirements of Rule 24(a)(2) are not rigid technical

3

requirements but simply intended to "capture the circumstances in which the practical effect on the prospective intervenor justifies its participation in the litigation". *San Juan County v. United States*, 503 F.3d 1163, 1195 (10th Cir. 2007) (*en banc*) (recognized as abrogated on other grounds in *Safe Streets Alliance v. Hickenlooper*, --- F.3d ---, 2017 WL 2454359). The Tenth Circuit has summarized the requirements for intervention as of right as follows: "(1) the application is timely; (2) the applicant claims an interest relating to the property or transaction which is the subject of the action; (3) the applicant's interest may as a practical matter be impaired or impeded; and (4) the applicant's interest is [not] adequately represented by existing parties." *See United States v. Albert Inv. Co.*, 585 F.3d 1386, 1391 (10th Cir. 2009) (quotation marks omitted); see *also Utahns for Better Transp. v. U.S. Dept. of Transp.*, 295 F.3d 1111, 1115 (10th Cir. 2002). Each of these requirements is met in this case.

First, this motion is "timely" as it was filed shortly after the action was filed and before any scheduling order. *Albert*, 585 F.3d at 1391; *see also S2 Automation LLC v. Micron Tech., Inc.*, CIV 11-0884 JB/WDS, 2012 WL 3656462, *13 (D.N.M. Aug. 14, 2012) (finding a motion to intervene timely because brought in early stages of litigation).

Second, the Pueblos claim an interest relating to the transaction that is the subject of the action because the Pueblos face the same illegal demands from the Defendants as the Original Plaintiffs, and this litigation, as a practical matter, could have significant impact on the Pueblos' ability to assert their rights if they are not permitted to intervene. "The central concern in deciding whether intervention is proper is the practical effect of the litigation on the applicant for intervention." *San Juan County, Utah*, 503 F.3d at 1193 (determining that the application of the "direct, substantial, and legally protectable interest" test is unduly restrictive of Rule 24(a)(2)). "[T]he interest claimed by the applicant in intervention [does not] have to be a direct interest in

4

the property or transaction at issue provided that it [is] an interest that would be impaired by the outcome." *Natural Resources Defense Council, Inc. v. U.S. Nuclear Regulatory Commission*, 578 F.2d 1341, 1344 (10th Cir. 1978) (internal citations omitted).  A mere threat of economic injury is sufficient to grant intervention in the Tenth Circuit.  *Utahns for Better Transp.*, 295 F.3d at 1115.

  The Pueblos are facing a substantial threat of economic injury if the State is permitted to impose financial obligations which violate federal law.  Such substantial interests are certainly going to be impacted by the outcome of this litigation because the Pueblos may be bound by the doctrine of stare decisis should they try to assert separate claims in future litigation.  The Pueblos wish to have a voice in this initial litigation and avoid being bound by any ruling which could substantially impair their rights in the future if not permitted to intervene.  As such, the threat of significant economic injury is a sufficient interest for purposes of intervening in the current litigation.

  Third, the Pueblos' interests may as a practical matter be impaired or impeded by this proceeding because re-litigation of this issue may be precluded by one or more of the preclusion doctrines including stare decisis. The Tenth Circuit has determined this element to be a minimal burden. *WildEarth Guardians*, 604 F.3d at 1199. To satisfy the impairment element of the intervention test, "[a] would-be intervenor must show only that impairment of its substantial legal interest *is possible* if intervention is denied." *Id.* (emphasis added). Were this suit to proceed through litigation and then be ruled on unfavorably by the Tenth Circuit, the doctrine of stare decisis would preclude a fresh consideration on the merits in future litigation. The Pueblos would then be, not only impaired or impeded in their efforts to assert their legal rights, but totally

prohibited from doing so. Given this harsh possibility, the Pueblos want the opportunity to be heard on these claims and to make arguments that may not be asserted by the original Plaintiffs.

Fourth, the Pueblos' interests are not adequately represented by the existing parties. The burden of establishing inadequate representation is a "minimal one of showing that representation may be inadequate." *Sanguine, Ltd. v. U.S. Dep't of Interior*, 736 F.2d 1416, 1419 (10th Cir. 1984) (quotation marks omitted); *see also Natural Resources Defense Council, Inc.*, 578 F.2d at 1346 (10th Cir. 1978) ("the possibility of divergence of interest need not be great" to show inadequate representation).

The Pueblos have no concerns whatsoever as to the competence, good faith or diligence of the attorneys for the Sandia, Tesuque, and Isleta Pueblos in this action. But the Pueblos' interests here are not adequately represented because each Pueblo is ultimately seeking to vindicate its own interests. Those interests may not necessarily be identical at every stage of this litigation. It is impossible to know—at this early stage—if decisions made in the best interest of one Pueblo Plaintiff in this case will be the most advantageous for all going forward and thus it is necessary for the Pueblos to intervene and be allowed to defend their rights in a manner that provides adequate representation at all times.

In conclusion, the Pueblos meet all required elements and should be allowed to intervene as of right in this litigation.

### 2. The Pueblos are Entitled to Permissive Intervention

In the alternative, the Pueblos seek permissive intervention under Fed. R. Civ. P. 24(b)(1)(B), which allows intervention upon a "timely motion," by anyone who "has a claim or defense that shares with the main action a common question of law or fact." In exercising its

discretion, the Court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

As described above, this motion is timely because it was filed shortly after the action was filed and before any scheduling order. *Albert*, 585 F.3d at 1391; *see also S2 Automation LLC*, 2012 WL 3656462, at *16 (finding a motion to intervene timely because brought in "early stages of litigation").

Additionally, the claims and defenses asserted by the Pueblos have almost all questions of law and fact in common with the claims asserted by the original Plaintiffs. The Pueblos seek to enjoin the State from enforcing an interpretation of the 2007 Compact that is in violation of federal law. This is the same objective sought by the original Plaintiffs as they have received nearly identical demands from the State. These common questions far out-weigh any factual distinctions in the grand scheme of this litigation, which weighs in favor of permitting intervention.

Finally, intervention in this case will not cause undue delay or prejudice. The Pueblos have not disrupted the proceedings "by unduly delaying in filing its motion to dismiss." *See S2 Automation LLC*, 2012 WL 3656462, at *17. This litigation is in the very early stages, and so there will be no hardship to any party if the Pueblos are allowed to participate. It would also be a waste of judicial resources to require the Pueblos to litigate essentially the same claims against the GCB in a separate proceeding. *See id.* (determining that judicial efficiency "counsels in favor of permitting intervention"). Considerable portions of the discovery and evidence need to pursue the claims in this case will be identical for both the original Plaintiffs and the Intervening Pueblos, further increasing the desirability of allowing intervention. Furthermore, the Pueblos' understanding of the factual and legal history of the issues in dispute further favors intervention.

*See Forest Guardians*, 2004 WL 3426413, at *11 (granting permissive intervention, in part, because intervenor was potentially "better situated to develop the underlying factual issues in this matter" and to provide the Court with a "thorough understanding" of the agreements at issue). The Pueblos should therefore be permitted to intervene.

## CONCLUSION

For the foregoing reasons, the Pueblos respectfully request that this Court grant their motion intervene and allow the Pueblos to file their Proposed Complaint-in-Intervention.

Respectfully submitted,

Dated: June 23, 2017

*/s/ Richard W. Hughes*
Richard W. Hughes
Donna M. Connolly
Reed C. Bienvenu
ROTHSTEIN, DONATELLI, HUGHES, DAHLSTROM, SCHOENBURG & BIENVENU LLP
P.O. Box 8180; 1215 Paseo de Peralta
Santa Fe, Mexico 87504
Tel.: 505-988-8004
rwhughes@rothsteinlaw.com
dconnolly@rothsteinlaw.com
rbienvenu@rothsteinlaw.com

*Attorneys for Applicant-Intervenors*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that service of the foregoing Memorandum of Law was made by CM/ECF on the following counsel of record on this 23rd day of June, 2017:

| | |
|---|---|
| David C. Mielke | Thomas J. Peckham |
| Sonoskey, Chambers, Sachse, Mielke & Brownell, LLP | Nordhaus Law Firm, LLP |
| 500 Marquette Ave., N.W., Suite 660 | 6705 Academy Rd., N.E., Suite A |
| Albuquerque, New Mexico 87102 | Albuquerque, New Mexico 87109-3361 |

Maxine R. Velasquez
General Counsel
Pueblo of Tesuque
Rte. 42, Box 360-T
Santa Fe, New Mexico 87506

                                            ___/s/Richard W. Hughes_____
                                                 Rothstein Donatelli LLP