UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

| | |
|---|---|
| THE PUEBLO OF ISLETA, a federally-recognized Indian tribe, THE PUEBLO OF SANDIA, a federally-recognized Indian tribe, and THE PUEBLO OF TESUQUE, a federally-recognized Indian tribe, <br><br>      Plaintiffs,<br><br>PUEBLO OF SANTA ANA, a federally-recognized Indian tribe, and PUEBLO OF SANTA CLARA, a federally-recognized Indian tribe,<br><br><br>PUEBLO OF SAN FELIPE, a federally-recognized Indian tribe,<br><br>     Plaintiffs-in-Intervention,<br><br>v.<br><br>SUSANA MARTINEZ, in her official capacity as Governor of the State of New Mexico, JEFFERY S. LANDERS, in his official capacity as Chair of the Gaming Control Board of the State of New Mexico, PAULETTE BECKER, In her official capacities as State Gaming Representative and as a member of the Gaming Control Board of the State of New Mexico, and SALVATORE MANIACI, in his official Capacity as a member of the Gaming Control Board of the State of New Mexico,<br><br>      Defendants. | No. 17-cv-654-KG-KK |

## MEMORANDUM OF LAW IN SUPPORT OF PUEBLO OF SAN FELIPE'S UNOPPOSED MOTION FOR LEAVE TO INTERVENE

Pursuant to Federal Rule of Civil Procedure 24, the Pueblo of San Felipe ("Pueblo of San

Felipe" or "Pueblo") submits this memorandum of law in support of its Unopposed Motion for Leave to Intervene. The Pueblo moves for intervention as of right under Rule 24(a)(2), or alternatively requests that the Court grant permissive intervention under Rule 24(b)(1)(B).

## BACKGROUND

The Pueblo of San Felipe operates Class III gaming in the State of New Mexico pursuant to a tribal-state gaming compact, as required by the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. § 2710 (d)(1)(C). In 2007, the Pueblo entered into a compact with the State of New Mexico that governed Class III gaming conducted on the Pueblo's lands. The Pueblo entered into a superseding compact with the State in 2016, which is identical, other than the name of the Pueblo, to the 2015 Compact entered into by each of the Plaintiff Pueblos ("2015 Compact").

On April 13, 2017, the Gaming Control Board ("GCB") of the State of New Mexico sent the Pueblo a "Notice of Noncompliance," alleging that the Pueblo had "failed to comply with or [ ] otherwise breached provisions of the 2007 Amended Tribal State Gaming Compact ("2007 Compact") affecting payment." The letter requested that the Pueblo pay the State a specified amount that the GCB claimed was due as revenue sharing payments on the value of "free play" credits played at the Pueblo's gaming facility during the period from April 1, 2011 through April 3, 2016, the effective date of the Pueblo's 2015 Compact. The Pueblo replied to this letter on May 19, 2017, articulating the reasons why it believed the claims to be baseless. On the same date, the Pueblo sent a separate letter to the State Gaming Representative, requesting that the GCB demonstrate how it had arrived at the dollar amount it contended was owed by the Pueblo. The GCB responded to the Pueblo's request for documentation by letter dated May 24, asserting that the source documents were in the Pueblo's possession. Because the Pueblo calculated a

different dollar amount of free play than did the GCB from the "source documents," the Pueblo sent another letter to the GCB on June 13, again requesting the worksheets for the State's calculations. The GCB provided information to the Pueblo on July 7.

On May 31, 2017, the GCB sent a "Notice to Cease Conduct" to the Pueblo. The letter ordered the Pueblo to "cease its failure to comply with the requirements of Section 11 of the 2007 Compact related to the computation of 'Net Win' and the payment of revenue sharing." The letter demanded that payment be made as requested in the April 13, 2017 letter.

The GCB made similar demands to most other gaming tribes in New Mexico, including the existing Plaintiff Pueblos. On June 19, 2017, Sandia, Tesuque, and Isleta Pueblos ("Original Plaintiffs") filed suit in this Court, seeking a declaration that the Defendants, individual members of the State Gaming Control Board and the Governor, are violating federal law by demanding that the Pueblos make payments that are forbidden by IGRA, and prospective injunctive relief to prevent them from pursuing these claims. Facing the same demands from the GCB, the Pueblos of Santa Ana and Santa Clara ("Initial Plaintiffs in Intervention") sought leave to intervene, which the Court granted by Order dated June 28.

Prior to filing this Motion, the Pueblo of San Felipe attempted in good faith to resolve its dispute with the State. Negotiating teams from both parties met on July 21. When it became obvious that the parties' positions were too far apart to bridge, the Pueblo was left with no choice but to litigate.

Accordingly, the Pueblo of San Felipe now wishes to intervene as an additional Plaintiff-in-Intervention, asserting essentially similar claims to those asserted by the Original Plaintiffs and the Initial Plaintiffs in Intervention. Like those other tribal Plaintiffs, the Pueblo of San Felipe alleges that the Defendants are violating federal law, specifically IGRA and regulations

issued thereunder, and the Tribal-State Class III Gaming Compact, by attempting to impose on the Pueblo's Class III gaming operations financial obligations that are contrary to and prohibited by federal law. The Pueblo seeks a Declaration that the Defendants' actions are in violation of federal law, and prospective injunctive relief enjoining Defendants, their agents and employees, from seeking to enforce those illegal financial obligations upon the Pueblo.

## ARGUMENT

### 1. The Pueblo is Entitled to Intervention as of Right

Federal Rule of Civil Procedure 24(a)(2) provides that upon a timely motion, the Court must permit intervention in an action by anyone who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." The Tenth Circuit follows "a somewhat liberal line in allowing intervention." *WildEarth Guardians v. National Park Service*, 604 F.3d 1192, 1198 (10th Cir. 2010) (quoting *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 995 (10th Cir. 2009); *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1249 (10th Cir. 2001). The requirements of Rule 24(a)(2) are not rigid technical requirements but simply intended to "capture the circumstances in which the practical effect on the prospective intervenor justifies its participation in the litigation." *San Juan County v. United States*, 503 F.3d 1163, 1195 (10th Cir. 2007) (*en banc*) (recognized as abrogated on other grounds in *Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865 (10th Cir. 2017).

The Tenth Circuit has summarized the requirements for intervention as of right as follows: (1) the application is timely; (2) the applicant claims an interest relating to the property or transaction which is the subject of the action; (3) the applicant's interest may as a practical

matter be impaired or impeded; and (4) the applicant's interest is not adequately represented by existing parties. *See United States v. Albert Inv. Co.*, 585 F.3d 1385, 1391 (10th Cir. 2009); *Utahns for Better Transp. v. U.S. Dept. of Transp.*, 295 F.3d 1111, 1115 (10th Cir. 2002). Each of these requirements is met here.

       1.      <u>Timeliness</u>. The timeliness of a motion to intervene is assessed in light of all the circumstances, including the length of time since the applicant knew of his interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual circumstances. *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1250 (10th Cir. 2001), *quoting Sanguine, Ltd. v. U.S. Dep't of Interior*, 36 F.2d 1416, 1418 (10th Cir. 1984) (quotation marks and citations omitted). This motion is timely. It was filed early in the proceeding, a mere five weeks into the litigation. There has been no Answer or other responsive pleading.[1]

      The Pueblo would have sought intervention at the same time as Santa Ana and Santa Clara Pueblos. However, San Felipe sought in the first instance to make a good faith effort to resolve the dispute. Despite good faith on both sides, the parties were unable to arrive at a mutually agreeable settlement. This motion is being filed within one week of that settlement meeting and on the same day as all current parties and the Pueblo of San Felipe participated in the court-mandated Meet and Confer. No party has been prejudiced. The Tenth Circuit has granted intervention far later in the proceedings. *See, e.g., Albert*, 585 F.3d at 1391 (noting that "all that had occurred prior to the motion to intervene were document discovery, discover disputes, and motions by defendants seeking a dismissal on jurisdictional grounds"); *S2 Automation LLC v. Micron Tech, Inc.*, CIV 11-0884 JB/WDS, 2012 WL 3656462, *13 (D.N.M.

---

[1] By Order entered July 13, this Court extended Defendants' time to answer or otherwise respond until August 10, 2017. (Doc. 26).

Aug 14, 2012) (finding a motion to intervene timely because brought in early stages of litigation, four days before the deadline for amendments and joinder of parties).  This motion is timely.

   2.  <u>The Pueblo's Interest in the Matter</u>.  The second requirement for intervention is equally satisfied here.  The Pueblo claims an interest relating to the transaction that is the subject of the action because the Pueblo faces the same illegal demands from the Defendants as the Original Plaintiffs and the Initial Plaintiffs in Intervention.  As a practical matter, this litigation could have a significant impact on the Pueblo's ability to assert its rights if it is not permitted to intervene.  "The central concern in deciding whether intervention is proper is the practical effect of the litigation on the applicant for intervention."  *San Juan County, Utah*, 503 F.3d at 1193 (determining that the application of the "direct, substantial, and legally protectable interest" test is unduly restrictive of Rule 24(a)(2)).  "[T]he interest claimed by the applicant in intervention [does not] have to be a direct interest in the property or transaction at issue provided that it [is] an interest that would be impaired by the outcome."  *Natural Resources Defense Council, Inc. v. U.S. Nuclear Regulatory Commission,* 578 F.2d 1341, 1344 (10th Cir. 1978) (internal citations omitted). A mere threat of economic injury is sufficient to grant intervention in the Tenth Circuit.  *Utahns for Better Transp.*, 295 F.3d at 1115.

   The Pueblo of San Felipe is facing a substantial threat of economic injury if the State is permitted to impose financial obligations that violate federal law.  Such substantial interests will surely be affected by the outcome of this litigation because the Pueblo may be bound by the doctrine of *stare decisis* should it try to assert separate claims in future litigation.  The Pueblo wishes to have a voice in this initial litigation and avoid being bound by any ruling that would substantially impair its rights in the future if not permitted to intervene.  As such, the threat of

significant economic injury is a sufficient interest for purposes of intervening in the current litigation.

3. <u>Potential Impairment of Interest</u>.  Third, the Pueblo's interests may as a practical matter be impaired or impeded by this proceeding because re-litigation of this issue may be precluded by one or more of the preclusion doctrines, including *stare decisis*.  The Tenth Circuit has pointed out that the question of impairment is not separate from the question of existence of an interest.  [T]he Rule refers to impairment 'as a practical matter.'  Thus, the court is not limited to consequences of a strictly legal nature.  To satisfy this element of the test, a would-be intervenor must show only that impairment of its substantial legal interest is possible if intervention is denied.  This burden is minimal."  *Utah Ass'n of Counties*, 255 F.3d at 1253 (internal citations and quotation marks omitted).  *See also WildEarth Guardians*, 604 F.3d at 1199 (same).

Were this suit to proceed through litigation and then be ruled on unfavorably by the Tenth Circuit, the doctrine of *stare decisis* would preclude a fresh consideration on the merits in future litigation.  The Pueblo would then be not only impaired or impeded in its efforts to assert its legal rights, but totally prohibited from doing so.  The Pueblo wants the opportunity to be heard on these claims and to make arguments that may not be asserted by Original Plaintiffs and Initial Plaintiffs in Intervention.

4. <u>Adequacy of Representation</u>.  Finally, the Pueblo's interests are not adequately represented by the existing parties.  The burden of establishing inadequate representation is a "minimal one of showing that representation may be inadequate."  *Sanguine, Ltd. v. U.S. Dep't of Interior*, 36 F.2d 1416, 1419 (10th Cir. 1984) (quotation marks omitted); *see also Natural*

*Resources Defense Council, Inc.*, 578 F.2d at 1346 ("the possibility of divergence of interest need not be great" to show inadequate representation).

The Pueblo has absolute confidence in the competence, good faith, and diligence of the attorneys for the Pueblos of Sandia, Isleta, Tesuque, Santa Ana, and Santa Clara in this action. Nonetheless, the Pueblo's interests here are not adequately represented because each Pueblo is ultimately seeking to vindicate its own interests. Those interests may not necessarily be identical at every stage of this litigation. It is impossible to know – at this early stage – if decisions made in the best interest of one Pueblo Plaintiff will be the most advantageous for all going forward. It is necessary for the Pueblo to intervene and be allowed to defend its rights in a manner that provides adequate representation at all times.

In short, the Pueblo meets all required elements and should be allowed to intervene as of right in this litigation.

### 2. The Pueblo is Entitled to Permissive Intervention

In the alternative, the Pueblo seeks permissive intervention under Fed.R.Civ.P. 24(b)(1(B), which allows intervention upon a "timely motion" by anyone who "has a claim or defense that shares with the main action a common question of law or fact." In exercising its discretion, the Court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed.R.Civ.P. 24(b)(3). As described above, *supra* at ___, this motion is timely because it was filed shortly after the action was filed.

Additionally, the claims and defenses asserted by the Pueblo share almost all questions of law and fact in common with the claims asserted by the Original Plaintiffs and Initial Plaintiffs in Intervention. The Pueblo seeks to enjoin the State from enforcing an interpretation of the 2007 Compact that is in violation of federal law. This is the same objective sought by the Original

Plaintiffs and Initial Plaintiffs in Intervention, as they have received nearly identical demands from the State. These common questions strongly weigh in favor of permitting intervention." The purpose of Rule 24 is the prevention of a multiplicity of suits where common questions of law or fact are involved." *Coalition of Arizona/New Mexico Counties for Stable Economic Growth v. Department of the Interior*, 100 F.3d 837, 844 (10th Cir. 1996).

Finally, intervention in this case will not cause undue delay or prejudice. The Pueblo has not disrupted the proceedings "by unduly delaying in filing its motion to dismiss." *See S2 Automation LLC,* 2012 WL 3656462, at *17. This litigation is in the very early stages, and there will be no hardship to any party if the Pueblo of San Felipe is allowed to participate. Although the motion was filed after issuance by the Court of the Initial Scheduling Order, neither the Court nor the other parties will be prejudiced. The first scheduled mandatory event was the Meet and Confer, which took place the date this motion was filed, July 28. The Pueblo of San Felipe attended that meeting with the consent of all parties.

It would also be a waste of judicial resources to require the Pueblo of San Felipe to litigate essentially the same claims against the GCB in a separate proceeding. *Id.* (determining that judicial efficiency "counsels in favor of permitting intervention"). Much of the discovery and evidence needed to pursue the claims in this case for the Original Plaintiffs, the Initial Plaintiffs in Intervention, and the Pueblo of San Felipe overlap and are duplicative, further increasing the desirability of allowing intervention.

As noted above, the Pueblo, with the consent of all parties, participated in the Meet and Confer held on July 28 and is otherwise participating in accordance with the Initial Scheduling Order (as the Proposed Order would require).

The Pueblo's proposed Complaint-in-Intervention is based directly on the Complaint-in-Intervention filed by the Pueblos of Santa Ana and Santa Clara, with their counsel's consent. Counsel for Applicant-Intervenor found conflicting authority on whether a Complaint-in-Intervention must stand on its own or, alternatively, may incorporate by reference an existing complaint in a case.  The Pueblo of San Felipe must, of course, allege its own facts to satisfy standing and other pleading requirements.  Out of an abundance of caution, the Pueblo has submitted a Complaint-in-Intervention that stands on its own.  However, the Pueblo is willing to take a different tack with guidance from the Court, now or later, to streamline the proceedings.

The existing parties have agreed to stay arbitration proceedings under the compacts.  *See* Order Approving Stipulation to Stay of Arbitration Proceedings (Doc. 28); Stipulation to Stay of Arbitration Proceedings (Doc. 25).  With the consent of all parties, the Proposed Order extends that stipulation to the Pueblo of San Felipe.

Finally, Defendants' deadline to answer or otherwise respond has been extended to August 10.  (Doc. 26).  Defendants' counsel has authorized the undersigned to represent that, if the Court permits the Pueblo to intervene, Defendants expect to answer or otherwise respond to San Felipe's Complaint-in-Intervention at the same time as they do to the Complaints filed by the existing Pueblo Plaintiffs.  If that proves not to be possible, the Pueblo of San Felipe has agreed to consent to a reasonable extension of Defendants' time to answer or respond.

## CONCLUSION

For all of the foregoing reasons, the Pueblo of San Felipe respectfully requests that this Court grant its motion for leave to intervene and allow the Pueblo to file its Proposed Complaint

in Intervention.

Dated:  July 28, 2017

                                Respectfully submitted,

                                */s/ Gwenellen P. Janov*\_\_\_\_
                                Gwenellen P. Janov
                                JANOV LAW OFFICES, P.C.
                                901 Rio Grande Blvd. NW., Suite F-144
                                Albuquerque, New Mexico  87104
                                Tel:     (505) 842-8302
                                Fax:    (505) 842-8309
                                gjanov@janovlaw.com

                                */s/ Joe M. Tenorio*\_\_\_\_
                                Joe M. Tenorio
                                TENORIO LAW OFFICES, P.A.
                                7720 San Agustine Street, NW
                                Albuquerque, New Mexico  87120
                                505-228-4823
                                joe@tenoriolawoffices.com

                                *Attorneys for Applicant-Intervenor*
                                *Pueblo of San Felipe*

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that service of the foregoing Memorandum of Law in Support of the Pueblo of San Felipe's Motion for Leave to Intervene was made by CM/ECF on the following counsel of record this 28th day of July, 2017:

| | |
|---|---|
| David C. Mielke | Thomas J. Peckham |
| Sonoskey, Chambers, Sachse, | Nordhaus Law firm, LLP |
|    Mielke & Brownell, LLP | 6705 Academy Road, NE, Suite A |
| 500 Marquette Ave., NW, Suite. 660 | Albuquerque, NM  87109-3361 |
| Albuquerque, NM  87102 | |
| | |
| Richard W. Hughes | Douglas B. L. Endreson |
| Donna M. Connolly | Frank Holleman |
| Reed C. Bienvenu | Sonosky Chambers Sachse |
| Rothstein Donatelli, Hughes, Dahlstrom, |    Endreson & Perry, LLP |
|    Schoenburg & Bienvenu, LLP | 1425 K Street NW, Ste. 600 |
| P.O. Box 8180, 1215 Paseo de Peralta | Washington, D.C.  20005 |
| Santa Fe, New Mexico  87504 | |

Edward Ricco
Krystle A. Thomas
Nelson Franse
Rodey, Dickason, Sloan,
   Akin & Robb
PO Box 1888
Albuquerque, New Mexico  87103-1888


                */s/ Gwenellen P. Janov*_____